ORRIN EMERSON, JR., executor, *vs.* CHARLES HEWINS.

*Construction of a will.*

A testatrix gave her property in trust to her son, whom she made executor of her will, for the benefit of her husband and children; declaring it to be her wish that her husband should have the management and control of it while he lived—the title in the meantime to be in the son, to whom she gave authority to sell any or all of it at such times and prices as his father should deem best, "the proceeds to go to my said husband for the benefit of himself and my children to be used by him for their benefit." The son gave bond as executor, but never did as trustee. But in pursuance of the power given him in the will, he exchanged some of the property for a stock of goods, of which he took a bill of sale running to him as executor, and made his father his agent to sell them in connection with a stock belonging to the father in an adjoining store. The goods were attached for the father's debt. The son brought suit against the attaching officer, describing himself as executor; the defendant justified his attachment, claiming that the goods were the property of the father:

*Held,* that under the issue thus raised, the defendant could not object that the plaintiff described himself in his writ as executor instead of trustee; that goods thus acquired by the executor in exchange for the property of the estate, though placed by him in the hands of the father for sale, were not liable to attachment for the debts of the father; that by "the proceeds" the testatrix meant the avails of the property when converted into cash; that proof that the father had represented the goods as his own, and had assumed to mortgage them with his own to a third party was not conclusive against his testimony in the case that the title remained in his son in trust; that evidence that the testatrix in her lifetime and by her will had intrusted the management of her property to her husband, would not, by itself, warrant the jury in coming to the conclusion that she held the property in fraud of her husband's creditors; that the value of certain articles for which the plaintiff claimed to recover, but which were not proved to have been conveyed to the executor in exchange for the property of the estate (amounting to $87.) must be deducted from the amount of the verdict, as of the date of its rendition.

ON EXCEPTIONS AND MOTION FOR A NEW TRIAL.

TRESPASS *de bonis* against the sheriff of Kennebec county for the tort of his deputy in attaching and selling as the property of Orrin Emerson, senior, a stock of fancy goods, claimed to belong to the plaintiff in his capacity as executor of the will of his deceased mother, Louisa Emerson.

Emerson v. Hewins.

The terms of this will, so far as they affect this case, the nature of the plaintiff's title, and the questions of law and fact upon which the exceptions and motion proceed, sufficiently appear by the opinion..

When the plaintiff rested his case the defendant moved for a nonsuit because the action is brought in the capacity of an executor, while the proof showed that if it belonged to the plaintiff at all, it was as a trustee under the will aforesaid. The judge overruled the motion, saying that the action was sustained by the evidence, and would be, had the plaintiff merely shown title as an individual.

After the evidence had been introduced by both parties, the defendant's counsel, in their closing argument to the jury contended, among other things, that the action could not be maintained by the plaintiff, because he has no title in his capacity as executor; and also, because under the will of Louisa Emerson, the goods having been purchased by a conveyance of real estate belonging to her estate, and delivered to Orrin Emerson, senior, the title at once vested in him by virtue of the will, and the executor no longer had any title or right to possession as against him, and the officer having attached the goods as the property of Orrin Emerson, had all the rights as against the plaintiff, which Orrin Emerson, senior, had, and requested the court so to instruct the jury; but the presiding judge instructed the jury to the contrary on both points, and that if Orrin Emerson, senior, received and held the goods as agent for the plaintiff, the title and right of possession would be in the plaintiff, and he might maintain the suit; that the title would not pass to Orrin Emerson, senior, under the will, though the goods were received for the land sold, unless delivered by the plaintiff to him to be his under the will.

The defendant's counsel also contended to the jury, that the title to the land for which the goods were received, was held by Louisa Emerson in fraud of the creditors of Orrin Emerson, senior, and was subject to attachment and levy as the property of said Emerson, and that the goods received therefor by his execu-

tor would be subject to attachment by the creditors of said Emerson as his property. Upon this point, the presiding judge charged the jury that they need have no trouble, but would lay it out of the case, as he saw no evidence of fraud in the title of Mrs. Emerson.

The plaintiff had a verdict for $531.27, which the defendant alleged to be not only against law and evidence, but clearly excessive upon the plaintiff's own testimony. They therefore moved to set it aside and filed exceptions to the rulings made and refused.

*A. Libbey* and *Joseph Baker* for the defendant.

I. The plaintiff has no title to the goods as executor of Louisa Emerson's estate. He could sell the land in Pittston as trustee only. If he had any title to the goods it was as trustee or in his own right. Such title will not support the action as executor.

II. Under the will of Louisa Emerson, the plaintiff was a dry, naked or passive trustee. Orrin Emerson the husband and the *cestui que use*, was to have the management and control of the property. The trustee was "to sell any or all of said property at such times and prices as his father may deem best." "The proceeds to go to my said husband for the benefit of himself and my children, to be used by him for their benefit." The children were to be educated by the father. Under the statute of uses the title passed directly to Orrin Emerson, and he had full power to dispose of the property. *Sawyer* v. *Skowhegan*, 57 Maine, 500.

The evidence of Orrin Emerson, senior, proves that he did dispose of the Pittston property, made the bargain, took the goods received for it, and proceeded to sell them keeping no account. On this state of facts could the plaintiff maintain a suit against Orrin Emerson, senior, to recover from him the goods? The will declares that the proceeds of such a sale shall go to Orrin Emerson, senior. The goods were his and attachable as his.

III. The question whether the title of Mrs. Emerson was not fraudulent as against her husband's creditors should have been submitted to the jury. There was some evidence from Mr. Whit-

more, from the acts of the parties, and the peculiar provisions of the will, tending to show that the wife held the title for the husband, he being insolvent. Especially as there was no attempt to show that she had any property in her own right, and the plaintiff's witness, Orrin Emerson, senior, was not asked to explain, though the action is really his.

IV. The verdict is against the evidence on two points.

1. The Chase goods were so intermingled with the goods of Orrin Emerson, senior, by the plaintiff or his agent, that they could not be separated.

2. The goods were delivered to Orrin Emerson by the plaintiff as his goods under the will, and not to hold as the agent of the plaintiff.

On the first point we call the attention of the court to the evidence, and to the fact that at least forty-one items, amounting to $421.50, on the schedule made by Emerson and his daughter, which Emerson swears contains nothing but the Chase goods, are not to be found on the bill of sale of the Chase goods. Emerson is the only witness who claims to know the Chase goods, and when we compare the two bills with each other we find he could not tell which were the Chase goods, or is wilfully false.

Upon the second point, Emerson is the only witness to prove that he held the goods for his son. He is contradicted by proof of his representations that they were his, and by his acts and all the surrounding facts and circumstances. He says he knew all the plaintiff received from sales of the property was his, under the will of his wife ; that he had received most all the proceeds of sales prior to that sale ; that the plaintiff was insolvent ; that he had guaranteed the payment of his debts taking mortgages of every article of property he had as security ; that he received the goods in suit, as a stock in part to go into trade with, in Augusta ; that he purchased other goods of like kind and put into his store with them and sold from them indiscriminately keeping no account of the sales of the Chase goods; that he had a paper from the plaintiff showing how much money the plaintiff had received and

kept belonging to the estate, and that was the only account between them. He admits that his son had left the state; that he did not know where he was and had not seen him for some three years prior to March, 1871, the time when he testified; and that the plaintiff had given him a power of attorney to transact all the business pertaining to his wife's (Louisa Emerson, deceased) estate.

Orrin Emerson, senior, took a retailer's license in his own name and mortgaged these very goods to Whitmore.

*Clarence C. Frost* for the plaintiff.

BARROWS, J. Orrin Emerson, junior, the plaintiff, describing himself in his writ as executor of the last will of Louisa Emerson, deceased, brings this action to recover the value of a stock of goods seized and sold by the defendant's deputy on process against Orrin Emerson, senior, the plaintiff's father; under which process the defendant claims to justify on the ground that the goods were in truth and fact the property of the father. The plaintiff produces a bill of sale from Maria C. Chase of a similar stock of somewhat greater value dated a few months previous to the attachment, and running to "Orrin Emerson, junior, executor of will of Louisa Emerson," and puts in testimony which may be regarded as proving that the Chase stock was conveyed to him in exchange for real estate formerly belonging to Louisa Emerson and deeded by the plaintiff as her executor to Mrs. Chase.

The stock so purchased seems to have been placed by the plaintiff in the hands of his father who undertook to act in the disposition of the same as the plaintiff's agent, this course of proceeding being supposed to be in accordance with certain provisions in the will of Louisa Emerson, whereby she gave her property, real and personal, to the plaintiff, in trust for his father during life with remainder to her children in equal proportions and declared her wish that her husband should have the management and control of the property while he lived—the title in the meantime to be in the plaintiff as trustee. The will proceeds: "I also give power and authority to said trustee to sell any or all of said property at

such times and prices as his father may deem best, and to give good and sufficient conveyances, the proceeds to go to my said husband for the benefit of himself and my children, to be used by him for their benefit. It is also my wish that my children should be well brought up and educated as thoroughly as may be deemed expedient by them and their father."

The manifest design of Louisa Emerson in this will was to appropriate the property which she left to the personal benefit and support of her husband and children, free from liability to be taken by her husband's creditors. To effect this, she created a trust for their joint benefit, placing the title to the property in this plaintiff, whom she also made executor of the will in such a manner as must prevent the property or any portion of it, (or property obtained in exchange for it, so long as the origin can be traced and the title continues in the plaintiff,) from being taken for the debts of Orrin Emerson, senior.

She directs her executor and trustee to permit Orrin Emerson, senior, to have the management and control of things, but not in such a way as to pass the property to him, because that would defeat her intentions so far as the children were concerned. Hence the title to the property was to be and remain in the plaintiff in trust, and however its form might change, so long as it could be traced, and until it was finally disposed of and converted into cash, and "the proceeds" were turned over to Orrin Emerson, senior, to be used for the support of himself and the children, it was competent for the plaintiff to pursue it and protect his title, and the design of the testatrix. Her desire to insure to her insolvent husband the management of the property resulted naturally enough in just such a complication as this case exhibits. The creditors of Orrin Emerson, senior, finding the property in his possession and apparently under his control, with other property confessedly his own, have attached it as his, and the plaintiff is compelled to vindicate his title by suit. The verdict being in his favor three questions are raised by exceptions to the ruling of the presiding judge.

I. Is it fatal to the maintenance of the suit that the plaintiff

has described himself in the writ as executor, instead of suing as trustee under the will, or in his individual capacity ?

Doubtless in the regular course of probate business the plaintiff ought before this time to have settled all his accounts as executor and to have given bond as trustee. But he has not done so. Yet this irregularity cannot relieve any one who shall be found to have wrongfully intermeddled with the property of the testatrix in his hands. The bill of sale from Mrs. Chase describes him as executor of the last will of Louisa Emerson. His title thus obtained he may vindicate in a suit so brought that the person and case may be rightly understood by the court. The defendant cannot object that he is described in the writ as he is in the bill of sale which is the evidence of his title. Either as executor or trustee he would be holding the goods in trust for the estate, and it is not perceived that it can be material to the issue here presented how he is designated. The defendant undertakes to justify on the ground that the goods were the goods of the father. He must stand or fall with his justification.

II. The defendant insists that the plaintiff had but a dry and passive trust and that under the statute of uses and the provisions of this will before recited, the title to Louisa Emerson's property passed to her husband as the *cestui qui use* and became liable to be taken for his debts.

But this would be a plain contravention of the terms and purpose of the will as we have already seen, and would defeat the object which she seems to have had in view which was the ultimate appropriation of "the proceeds" of her estate to the personal comfort and support of the husband and children. We cannot hold that a mere exchange of a piece of the property held in trust by the plaintiff for other property real or personal, not money—creates the condition of things under which Louisa Emerson contemplated the transfer of "the proceeds" to her husband for the support of himself and her children. It was competent for Louisa Emerson to guard the interest of her children in her property by placing the title to it in the plaintiff even while she directed him

to be governed in the management and disposal of it by his father, nor would this make the property liable, while he thus held the title, to be taken for the debts of the father, even though it might be in the father's possession for the purpose of being converted into money and appropriated to the use of the beneficiaries under the will by him. Not the property but "the proceeds" of it, in the language of the will, were "to go to" Orrin Emerson, "for the benefit of himself and my children, to be used by him for their benefit." There is room for a further question whether the proceeds were not thereby given to the husband subject to a trust which could be enforced for the benefit of the children; but none at all, that the title to the Chase goods was in the plaintiff free from all liability to be taken for the debts of the father.

III. The judge instructed the jury that they need not trouble themselves with the inquiry whether Louisa Emerson held the title in fraud of her husband's creditors, for he saw no evidence of such a proposition. In so instructing them we think he was clearly right. The conversation with Mr. Whitmore and the provisions of the will showed nothing except that Mrs. Emerson had confidence in the capacity of her husband to manage her property provided it were so held as not to be subject to seizure for his debts, but had no tendency to show that her title accrued in fraud of his creditors. The burden of proof is upon the creditor alleging such fraud. *Winslow* v. *Gilbreth*, 50 Maine, 90.

The defendant has no just cause of complaint in the instructions to the jury. Under the motion for a new trial the defendant contends that the evidence demonstrates the fact that the plaintiff did in fact put the goods into the possession of his father as his goods under the will and not to be held by him as plaintiff's agent; and that they were so intermingled with the goods of the father that they could not be separated.

But upon both these propositions the evidence was conflicting and we find nothing of a character sufficiently decisive to warrant us in setting aside the verdict. Doubtless Orrin Emerson, senior, said and did much to convey the idea to others that the goods be-

longed to him absolutely ; but the Chase goods were not his nevertheless, but belonged to the estate of Louisa Emerson, to be disposed of as she had directed. The defendant further contends that the verdict is excessive as including damages for other goods not belonging to the Chase stock, but carelessly or falsely represented by Orrin Emerson, senior, in his testimony, as part thereof. Our attention is called to many items which do not appear in the schedule of the Chase goods. That the items in the two schedules should be identical is not to be expected, especially in view of the fact that the Chase schedule embraces items of the following description—"2 show cases and contents $225 ;" "dry goods $30," besides various "lots" which may fairly be supposed to have been more specifically described when the goods were attached.

But there is nothing in the Chase stock that corresponds with the items of the sewing machine and ladies' cloth boots charged in the plaintiff's schedule at $60 and $27 respectively. Evidently they were no part of the Chase goods. For aught that appears however they went to make up the amount for which the plaintiff had a verdict. The verdict must be set aside unless the plaintiff remits $87 thereof as of the date of its rendition. If he does so the entry will be *Motion and exceptions overruled.*

APPLETON, C. J., WALTON, VIRGIN and PETERS, JJ., concurred.